USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8-14-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINDSAY DANIELS,

Plaintiff,

-v-

THE CITY OF NEW YORK, *et al.*,

Defendants.

No. 15-cv-2251 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Lindsay Daniels ("Plaintiff") brings this action under 42 U.S.C. § 1983 against Defendants the City of New York (the "City") and various police officers of the New York City Police Department (the "NYPD") – specifically, Officers Brendan Regan ("Regan"), Terence McGrath ("McGrath"), Alejandro Rivas ("Rivas"), Paul Arico ("Arico"), Richard Balboolal ("Balboolal") (collectively, the "Defendant Officers" or "Officers"), and Sergeant Fredy Cruz ("Sergeant Cruz," and collectively, with the Defendant Officers, the "Individual Defendants," and collectively with the Individual Defendants and the City, "Defendants") – alleging a claim for false arrest against the Individual Defendants and a claim for municipal liability against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Now before the Court is Defendants' motion for summary judgment on both claims pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 32.) For the reasons set forth below, Defendants' motion is granted.

# I. Background

## A. Facts[1]

On March 27, 2012, Sergeant Cruz assigned the Defendant Officers to a "Conditions Unit" and instructed them to patrol the area around 172nd Street and St. Nicholas and Audobon Avenues in New York City, where concerned citizens had recently reported incidents of drug sales and related crime. (*See* Def. 56.1 ¶ 1.) As part of the operation, Officer Balboolal served as an undercover officer on the lookout for unlawful activity, with instructions to radio the other Defendant Officers a description of anyone he saw purchasing drugs in the area. (*Id.* ¶¶ 3–5, 9, 20; *see also id.* ¶¶ 10, 14–19.) That afternoon, between approximately 1:00 and 1:30 p.m., Officer Balboolal observed what he believed to be a hand-to-hand drug transaction between a drug dealer and a tall, African American female, sporting an afro hairstyle, wearing a black jacket, and carrying a blue purse. (*Id.* ¶¶ 6–7; *see also id.* ¶ 9.) After observing this transaction, Officer Balboolal radioed the woman's description and the direction in which she was walking to Officers Rivas, Arico, Regan, and McGrath, one of whom confirmed receipt of Officer Balboolal's message and stated that the female subject was in their line of sight. (*Id.* ¶¶ 1–2, 10–11.)

The record reflects that Plaintiff is a six foot tall, African American woman, who on March 27, 2012, had an afro and was wearing a black jacket. (*Id.* ¶ 8.) Moreover, Plaintiff admits that on March 27, 2012, at or about the time that Officer Balboolal was conducting drug surveillance on 172nd Street between St. Nicholas and Audubon Avenues, Plaintiff purchased marijuana from

[1] The facts set forth herein are taken from Defendants' Local Civil Rule 56.1 Statement (Doc. No. 35 ("Def. 56.1")), Plaintiff's Counterstatement (Doc. No. 39 ("Pl. 56.1 Counter")), Defendants' Reply Statement (Doc. No. 42 ("Reply 56.1")), the declarations submitted in support of and in opposition to Defendants' motion for summary judgment (Doc. Nos. 34 and 40), and the exhibits attached thereto (Doc. Nos. 34-1–14 and 40-1–5). Unless otherwise noted, where one party's 56.1 statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding Defendants' motion for summary judgment, the Court also considered Defendants' memorandum of law in support of their motion (Doc. No. 33 ("Def. Mem.")), Plaintiff's memorandum of law in opposition to the motion (Doc. No. 38 ("Pl. Mem.")), and Defendants' reply in further support of the motion (Doc. No. 41 ("Reply")).

a drug dealer at that location, and then headed home to her apartment building located nearby at West 172nd Street. (*Id.* ¶ 9; *see also* Transcript of Plaintiff's Deposition ("Pl. Depo.") at 65:7–24.) Upon arriving at her building, Plaintiff encountered Officers Rivas, Arico, Regan, and McGrath (Def. 56.1 ¶¶ 14–19, 25), at which time Rivas approached, stopped, and asked Plaintiff "where the weed that [she] had was." (*Id.* ¶ 20; *see also id.* ¶¶ 14–19.) When Plaintiff did not answer, Officer Rivas began to search her, at which point she became fearful and "'willingly went into [her] bra and took out the dime bag of weed that [she] had.'" (*Id.* ¶¶ 21–22 (quoting Pl. Depo. at 37:25–38:2).) At approximately 1:35 p.m., right after Plaintiff showed Officer Rivas the bag of marijuana, Officer Rivas instructed her to put the bag back into her bra and arrested her for unlawful drug possession. (*Id.* ¶¶ 23–24.) During this time, Officers Regan, McGrath, and Arico stood by, but were not otherwise involved in this stop and search of Plaintiff. (*Id.* ¶ 25.)

After Plaintiff was arrested, Officers Rivas and Regan transported her to the 33rd precinct, where, at Officer Rivas' request, a female police officer removed the marijuana from Plaintiff's bra. (*Id.* ¶¶ 27–29.) Plaintiff was then placed in a holding cell, and at approximately 2:00 p.m., Officer Balboolal visited Plaintiff and confirmed that she was the individual he had seen engage in the hand-to-hand drug transaction earlier that day. (*Id.* ¶¶ 30–31.) Plaintiff was ultimately charged with criminal possession of marijuana in the fifth degree based on the sworn statement of Officer Balboolal and accepted an adjournment in contemplation of dismissal. (*Id.* ¶¶ 33–34.)

B. Procedural History

On March 25, 2015, Plaintiff initiated this action against Defendants pursuant to 42 U.S.C. § 1983, alleging a false arrest claim against the Individual Defendants and a claim for municipal liability against the City. (Doc. No. 1.) By June 24, 2015, Plaintiff effectuated service of the Complaint on all Defendants, who filed an Answer on September 24, 2015. (*See* Doc. Nos. 6–12

and 24.) Thereafter, the parties proceeded with discovery, which closed on November 15, 2015. (*See* Doc. No. 23.) On December 28, 2015, Defendants filed their motion for summary judgment, which was fully briefed as of January 22, 2016. (*See* Doc. Nos. 32, 38, and 41.) Meanwhile, in early December 2015, the parties stipulated to the dismissal of Plaintiff's claims against Defendants McGrath and Sergeant Cruz. (*See* Doc. Nos. 27–28 and 43.)

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable factfinder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); and/or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks

omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## III. Discussion

As noted above, the Complaint alleges two claims against Defendants pursuant to 42 U.S.C. § 1983 – a claim for false arrest against the Individual Defendants and a *Monell* claim for municipal liability against the City. (*See* Doc. No. 1.) The Court will address each in turn.

### A. False Arrest

Defendants argue that Plaintiff's Section 1983 false arrest claim should be dismissed because the Defendant Officers had probable cause to arrest her based on Officer Balboolal's observations, which were radioed to the Conditions Unit prior to the stop. The Court agrees.

Claims brought under Section 1983 are analyzed pursuant to the same standards as the applicable state tort law – here, New York law. *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003); *see also Costello v. Milano*, 20 F. Supp. 3d 406, 413 (S.D.N.Y. 2014). A Section 1983 claim for false arrest, based on the Fourth Amendment right to be free from unreasonable searches and seizures, "is substantially the same as a claim for false arrest under New York law." *Weyant*, 101 F.3d at 852. To prove such a claim, a plaintiff must show that "(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not

consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). The law is clear that probable cause makes a confinement "privileged" and "is a complete defense to a claim of false arrest." *Weyant*, 101 F.3d at 852. "Privilege may be established by showing the existence of probable cause for the arrest or detainment. . . . Therefore, '[u]nder New York law, probable cause to arrest is a complete defense to a claim of false arrest.'" *Nunez v. City of New York*, No. 14-cv-4182 (RJS), 2016 WL 1322448, at *4 (S.D.N.Y. Mar. 31, 2016) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). "[P]robable cause as to any charge at the time of arrest is sufficient to defeat a false arrest claim as a matter of law. . . . However, [w]here the defense of probable cause is based on conflicting evidence, the question is resolved by the jury." *Richardson v. N.Y.C. Health & Hosps. Corp.*, No. 05-cv-6278 (RJS), 2009 WL 804096, at *7 (S.D.N.Y. Mar. 25, 2009) (alterations in original and internal citations and quotation marks omitted).

"Although the existence of probable cause must be determined with reference to the facts of each case, in general '[p]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). In determining whether there was probable cause to arrest an individual, the question of "[w]hether probable cause existed for the charge actually invoked by the arresting officer at the time of the arrest is irrelevant." *Ackerson*, 702 F.3d at 20 (internal quotation marks and citation omitted). Rather, the relevant inquiry is whether "there was probable cause to arrest . . . for any single offense." *Id.* (alteration

and internal citation omitted); *see also id.* ("[U]nder New York law[,] probable cause does not require an awareness of a particular crime, but only that some crime may have been committed." (internal quotation marks and citation omitted)); *Costello*, 20 F. Supp. 3d at 414 ("[B]ecause probable cause is evaluated under an objective standard, it need not be 'predicated upon the offense invoked by the arresting officer, or even upon an offense closely related to the offense invoked by the arresting officer,' and 'the subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006))). "Whether probable cause is established depends on the totality of the circumstances, . . . including the information possessed by the officer prior to making the arrest and [his or] her experience." *United States v. Wilson*, 94 F. App'x 14, 16–17 (2d Cir. 2004) (citing *Illinois v. Gates*, 462 U.S. 213, 230–32 (1983); *United States v. Ginsberg*, 758 F.2d 823, 828 (2d Cir. 1985)); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (a court must determine "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest"). "[U]nder both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007).

However, "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer" is nevertheless "entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Ackerson*, 702 F.3d at 21. "In this respect,

the qualified immunity test is more favorable to the officers than the one for probable cause." *Id.* Indeed, "qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Costello*, 20 F. Supp. 3d at 416 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "In deciding whether an officer's conduct was 'objectively reasonable' for purposes of qualified immunity, [courts] look to the information possessed by the officer at the time of the arrest," without reference to " the subjective intent, motives, or beliefs of the officer." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010). "Because qualified immunity is an affirmative defense, [the] defendants bear the burden of showing that there was arguable probable cause." *Gaston v. City of New York*, 851 F. Supp. 2d 780, 795 (S.D.N.Y. 2012) (collecting cases). Moreover, since qualified immunity entitles a defendant to complete immunity from suit, rather than simply a defense to liability, a court "where possible, should rule on the question of qualified immunity at the earliest possible stage of the litigation." *Costello*, 20 F. Supp. 3d at 416. Summary judgment on qualified immunity grounds is warranted where "'the defendant shows that no reasonable jury, viewing the evidence in the light most favorable to the plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law.'" *Id.* (alteration omitted) (quoting *Husain v. Springer*, 494 F.3d 108, 131 (2d Cir. 2007)).

Here, the circumstances surrounding Plaintiff's March 27, 2012 arrest are largely undisputed. Specifically, the undisputed evidence in the record clearly establishes that on March 27, 2012, between approximately 1:00 p.m. and 1:30 p.m., as a result of recent reports of drug sales and related crimes occurring in the area, Officer Balboolal was patrolling the area around 172nd Street between Audubon and Saint Nicholas Avenues for drug activity (Def. 56.1 ¶¶ 1, 4); that he "observed" a "tall," "African American woman," with an afro hairstyle in a black leather jacket, and carrying a blue purse "give 'what appeared to be US currency' in exchange for 'a small

object'" to a man (Pl. 56.1 Counter ¶ 6; Def. 56.1 ¶¶ 6–7); that Officer Balboolal relayed this observation "over the radio" to Officers Rivas, Arico, and McGrath (Pl. 56.1 Counter ¶ 10; *see also* Def. 56.1 ¶ 10); and that shortly after this transaction took place, Officer Rivas approached Plaintiff outside of her apartment building and asked her "'where the weed that [she] had was.'" (Def. 56.1 ¶¶ 20–21 (quoting Pl. Depo. at 35:12–25).) In light of these undisputed facts, the Court finds as a matter of law that there was probable cause to arrest Plaintiff after Officer Balboolal observed her participate in a hand-to-hand transaction – which he reasonably believed to be a drug deal – in the heart of a drug-prone neighborhood. *See Smith v. City of New York*, No. 04-cv-3286 (TPG), 2010 WL 3397683, at *7–8 (S.D.N.Y. Aug. 27, 2010) ("[C]ourts in this [C]ircuit have routinely found probable cause to arrest when the officer believes, based on his or her own observation and experience, that an individual was engaged in a hand-to-hand drug sale."), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013); *United States v. Nester*, No. 86-cr-1001 (KAR), 1987 WL 13184, at *5 (S.D.N.Y. June 24, 1987) (noting that "the observation of currency in the course of a hand-to-hand transaction typical of [drug] sales acts as further support for a finding of probable cause"; indeed, "[c]ase law suggests that the observation of either drugs or money in a transaction which takes place under otherwise suspicious circumstances will justify an arrest"); *see also People v. Jones*, 90 N.Y.2d 835, 837 (1997) (affirming probable cause finding based on officer's observation of a single transaction where the officer "observed" the criminal defendant "in a conversation with an unidentified woman in an area [that the officer] characterized as a drug-prone location," "[t]he woman handed [the] defendant money in exchange for an object that [the officer] was unable to see," and "[g]iven the particular way the woman handled the item, [the officer] believed a drug transaction had just taken place").

With respect to Officers Rivas, Regan, and Arico, the Court notes that where, as here, "law enforcement authorities . . . [work together on] an investigation . . . , the knowledge of one is presumed shared by all." *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 127 (2d Cir. 2009) (quoting *Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983)); *see also United States v. Canieso*, 470 F.2d 1224, 1230 n.7 (2d Cir. 1972). This so-called "collective or imputed knowledge" doctrine was "developed in recognition of the fact that with large police departments and mobile defendants, an arresting officer might not be aware of all the underlying facts that provided probable cause or reasonable suspicion, but may nonetheless act reasonably in relying on information received by other law enforcement officials." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001). Under this doctrine, an arrest or search "is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *Id.*; *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("police officers, when making a probable cause determination, . . . are entitled to rely on the allegations of fellow police officers"). Thus, the Second Circuit has recognized that a court's "assessment as to whether probable cause existed at the time of the arrest is to be made on the basis of the collective knowledge of the police, rather than on that of the arresting officer alone." *Husbands ex rel. Forde*, 335 F. App'x at 127. Not surprisingly, "application of [this] . . . doctrine requires that at some point along the line, some law enforcement official – or perhaps some agglomeration of such officials – involved must possess sufficient information to permit the conclusion that a search or arrest is justified." *Colon*, 250 F.3d at 136; *see also Costello*, 20 F. Supp. 3d at 414 ("an arrest is justified if one officer participating

in the arrest or investigation knew of facts sufficient to provide probable cause, because such knowledge is imputed to each officer who participated in the arrest").

In this case, there is no dispute that upon witnessing Plaintiff's transaction, Officer Balboolal immediately relayed over the radio his observations and a detailed description of Plaintiff and the direction in which she was headed to the other Officers assigned to the Conditions Unit with him that day. One of these Officers then confirmed receipt of Officer Balboolal's message and informed him that Plaintiff was in their line of sight. It is also undisputed that very shortly thereafter, Officers Rivas, Regan, and Arico – who were the other officers assigned to the Conditions Unit that day – approached Plaintiff, who matched the description of the female suspect, and was near the location of the transaction, just described by Officer Balboolal over the radio. Given these facts, the Court finds that Officers Rivas, Regan, and Arico were the ones who received Officer Balboolal's message. Therefore, in light of the Court's probable cause finding as to Officer Balboolal, the Court further finds that these other Officers also had probable cause to stop and arrest Plaintiff as of the moment that they received Officer Balboolal's radio message. *See, e.g.*, *United States v. Foreman*, 993 F. Supp. 186, 188–89 (S.D.N.Y. 1998) (finding probable cause to arrest where police officers were "conduct[ing] a surveillance at [an] intersection" and one of them "observed" the defendant engage in what he believed was a "hand-to-hand drug transaction" and subsequently "radioed the field team . . . and instructed them to arrest" the defendant); *see also People v. Garcia*, 132 A.D.3d 405, 405 (N.Y. App. Div.), *leave to appeal denied*, 26 N.Y.3d 1039 (2015) ("The court's finding of probable cause was supported by an officer's testimony regarding her observation, in a drug-prone location, of a suspicious exchange between [the] defendant and another man of a small object for money. . . . The officers who

performed the actual arrest and search received the information from the officer in the observation post, and were entitled to rely on that information pursuant to the fellow officer rule.").

Interestingly, Plaintiff does not dispute that Officer Balboolal had probable cause to arrest her based on his observation, nor does Plaintiff seem to dispute that Officers Rivas, Arico, and Regan would have had probable cause, or at least arguable probable cause, to stop and search Plaintiff if they were in fact the ones who received Officer Balboolal's radio transmission. (*See* Pl. Mem. at 8.) Rather, Plaintiff argues that there is an issue of material fact as to whether Officers Rivas, Arico, and Regan were in fact the ones who *received* this transmission given their testimony that they do not specifically recall stopping and arresting Plaintiff on March 27, 2012. (*Id.* at 6–7.) As indicated above, the Court rejects this assertion.

As an initial matter, the testimony of Officers Rivas, Arico, and Regan is simply not in tension with the undisputed factual evidence in the record that these Officers were in fact the ones who received Officer Balboolal's transmission and "who stopped and arrested her." (Def. Mem. at 2.) Indeed, Plaintiff herself identified Officers Rivas, Arico, and Regan as the officers who stopped and arrested her on March 27, 2012 – a fact Defendants do not dispute. Accordingly, the fact that these Officers – who have engaged in dozens or even hundreds of such operations – now lack a specific recollection on the events surrounding the arrest does not create a disputed issue of fact on this issue. *See Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 346 n.19 (S.D.N.Y. 2005) (rejecting the plaintiff's "attempt to create a genuine issue for trial by asking the [c]ourt to selectively disregard his prior sworn testimony and selectively credit directly contradictory testimony of his adversaries").

Furthermore, the only reasonable inference to draw from the evidence in the record is that these Officers were the ones who received Officer Balboolal's transmission. It is undisputed that

after sending this transmission, Officer Balboolal "received a radio [response] from an officer saying the female suspect was in sight" (Pl. 56.1 Counter ¶ 11; *see also* Def. 56.1 ¶ 11) and that Officer Rivas "was assigned to the apprehension car" on March 27, 2012, "meaning he was responsible for picking up any individuals whose description Officer Balboolal disseminated over the point-to-point radio" that day (Def. 56.1 ¶ 13; *see also* Pl. 56.1 Counter ¶ 13). In addition, Officer Balboolal explained that "his radio transmission would not have gone to anyone other than [his fellow] officers" assigned to the Conditions Unit that day (*see* Reply at 4) – that is, Officers Rivas, Arico, and McGrath (*see* Def. 56.1 ¶¶ 1–2; *see also* Pl. 56.1 Counter ¶¶ 1, 3). In light of this evidence, and the fact that Plaintiff – who matched Officer Balboolal's radio description of a six foot tall, African American woman, with an afro and a black jacket – was then stopped shortly thereafter by the very Officers tasked with receiving and acting on Officer Balboolal's radio transmission, the Court finds that no reasonable juror could conclude that someone other than Officers Rivas, Regan, and/or Arico received Officer Balboolal's radio transmission.

Plaintiff nevertheless argues that even assuming that she was lawfully stopped, her constitutional rights were nevertheless violated when Officer Rivas "exceeded the permissible scope of a *Terry* stop" by searching the inside of her pockets. (Pl. Mem. at 8 (citing *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 609 (S.D.N.Y. 2013)).) However, the undisputed evidence in the record demonstrates that Officer Rivas' search of Plaintiff was justified as a search incident to Plaintiff's arrest. As such, "it is irrelevant" whether such a search was conducted "prior or subsequent to [the] arrest." *Wilson*, 94 F. App'x at 17 (citing *United States v. Ricard*, 563 F.2d 45, 49 (2d Cir. 1977)); *see also Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search . . . , we do not believe it particularly important that the search preceded the arrest rather than vice versa"); *United States v. Jenkins*, 496

F.2d 57, 72–73 (2d Cir. 1974) ("The mere fact that . . . the search [was conducted] before the arrest, did not render it illegal as long as probable cause to arrest existed at the time of the search."). Moreover, the Supreme Court has recognized that in contrast to the relatively limited purpose and scope of a *Terry* stop, a search incident to an arrest "can . . . involve a relatively extensive exploration of the person," *United States v. Robinson*, 414 U.S. 218, 227 (1973); *see also id.* at 227–28 ("*Terry* . . . affords no basis to carry over to a probable-cause arrest the limitations [the Supreme] Court placed on a stop-and-frisk search permissible without probable cause."), and can be a search "for both evidence and weapons," *Diehl v. Munro*, 170 F. Supp. 2d 311, 319 (N.D.N.Y. 2001). Therefore, because at the time Officer Rivas stopped and searched Plaintiff, he already had probable cause to believe that she had recently purchased marijuana "during the apparent drug transaction observed by [Officer Balboolal]," *id.* at 405–06, the Court finds that Officer Rivas' brief search of the inside of Plaintiff's pockets for the contraband was part of a search incident to Plaintiff's arrest and was lawful.

Accordingly, for the reasons set forth above, the Court finds that there are no genuine disputes as to any material fact regarding Plaintiff's March 27, 2012 arrest, that the undisputed evidence in the record clearly establishes that the Defendant Officers had probable cause to stop, search, and arrest Plaintiff, and that Defendants are therefore entitled to summary judgment on Plaintiff's false arrest claim.

Moreover, even if probable cause were lacking here – and it was not – summary judgment in favor of Defendants would still be warranted on qualified immunity grounds. As noted above, police officers "are shielded from liability for civil damages" so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In light of the facts found herein,

the Court concludes that a reasonable police officer in the same circumstances as Defendant Officers here could have reasonably believed that probable cause existed to stop and arrest Plaintiff for unlawful possession of marijuana and that there was a legal basis for the kind of search conducted by Officer Rivas. Accordingly, in the alternative, the Court finds that Defendants are entitled to summary judgment on Plaintiff's false arrest claim on qualified immunity grounds.

B. *Monell* Liability

Having determined that Defendants are entitled to summary judgment on Plaintiff's false arrest claim, the Court may quickly dispense with Plaintiff's claim against the City for municipal liability under *Monell*. "A municipality may be held liable as a 'person'" under § 1983 "when a civil rights violation results from a municipality's policy or custom." *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 314 (S.D.N.Y. 2008) (citing *Coon v. Town of Springfield*, 404 F.3d 683, 686 (2d Cir. 2005)); *see also Reynolds v. Giuliani*, 506 F.3d 183, 190 (2d Cir. 2007). "A plaintiff making a *Monell* claim against a municipality must establish three elements: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Blazina v. Port Auth.*, No. 06-cv-481 (KNF), 2008 WL 919671, at *6 (S.D.N.Y. Apr. 1, 2008) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). Obviously, a "municipality cannot be liable for acts by its employees which are not constitutional violations." *Martinez v. City of New York*, No. 06-cv-5671 (WHP), 2008 WL 2566565, at *4 (S.D.N.Y. June 27, 2008), *aff'd*, 340 F. App'x 700 (2d Cir. 2009); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a plaintiff cannot show that her constitutional rights were violated by a municipal actor, then she cannot establish liability under a *Monell* claim); *Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001) ("[A] municipality cannot be liable for inadequate

training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights.").

Here, the Court's findings that Plaintiff's stop, search, and arrest were lawful, and its corresponding grant of summary judgment in favor of Defendants on Plaintiff's false arrest claim, are fatal to Plaintiff's *Monell* claim. Specifically, since Plaintiff failed to establish an underlying constitutional violation by the Individual Defendants in connection with her false arrest claim, she necessarily cannot prove at least one required element of a *Monell* claim. Accordingly, the Court finds that the City is entitled to summary judgment on Plaintiff's *Monell* claim. *See Martinez*, 2008 WL 2566565, at *4 (granting defendants' motion for summary judgment on plaintiff's municipal liability claim in light of the court's prior finding that "no underlying constitutional violations" occurred).

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED and this case is dismissed in its entirety. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 32 and to close this case.

SO ORDERED.

Dated: August 14, 2016
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE